Argued May 18, decided June 6, 1911.

## WOODWARD *v.* BARBUR.

### [116 Pac. 101.]

MUNICIPAL CORPORATIONS—INITIATIVE AND REFERENDUM PROVISIONS—
   ORDINANCES—VALIDITY.

1. A provision in the initiative and referendum ordinance of the City of Portland, requiring the city auditor to accept for filing any initiative or referendum petition, subject to the verification of the number and genuineness of the signatures, and voting qualifications of the signers by reference to the registration books in the office of the county clerk, is an unwarranted restriction to "registered voters" to exercise the initiative power guaranteed by Section 1*a*, Article IV, of the Constitution of Oregon, and Section 2, Article XI, to "legal voters."

MUNICIPAL CORPORATIONS—INITIATIVE AND REFERENDUM—DEPRIVATION
   OF CONSTITUTIONAL RIGHT.

2. The privilege of signing an initiative petition under Section 1*a*, Article IV, of the Constitution of Oregon, and Section 2, Article XI, declaring that the manner of exercising the initiative and referendum powers shall be prescribed by general laws, except that cities may provide for the manner of the exercise of such powers as to their municipal legislation, etc., cannot be abridged by any legislation amounting to a deprivation of the right, though participation in the initiative of measures is not an election; the authority conferred being closely allied to an election.

MUNICIPAL CORPORATIONS—CHARTER AMENDMENTS—INITIATIVE PETITION
   —REQUISITES.

3. Where an initiative petition proposing an amendment to the charter of a city has the requisite number of names subscribed to the statement that each has personally signed the petition, that he is a legal voter of the city, and that his residence and street number are correctly written after his name, and verified as required by the ordinance of the city regulating the initiative, a *prima facie* case is made entitling the initiative measure prposed to be entered by proper title on the official ballots, and the city auditor has the burden of showing fraud.

Municipal Corporations—Initiative Petition—"Legal Voters."
4. Nonregistered electors who may exercise the right to vote at an election by the production of the proof required by Section 3463, L. O. L., prescribing the manner in which nonregistered electors may establish their right to vote, are "legal voters" within Section 2, Article XI, and Section 1*a*, Article IV, of the Constitution of Oregon, granting to legal voters the right to amend their municipal charter, and such electors may sign an initiative petition proposing an amendment to the charter.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Tyler Woodward to enjoin A. L. Barbur, auditor of the City of Portland, from placing on official ballots, to be used at an election to be held in Portland, the title of a proposed amendment to its charter, recommended by initiative petitions. It is alleged in the complaint that plaintiff, Tyler Woodward, is a resident and taxpayer of Portland, which city is a municipal corporation, and the defendant, A. L. Barbur, is its auditor; that a city ordinance makes it incumbent upon that officer to receive for filing initiative petitions, subject to verification as to the genuineness of the signatures of the petitioners, and as to their respective qualifications as electors, to be determined from an inspection of the registration books of Multnomah County, and, unless such petition is signed by legal voters equal to 15 per cent of the votes cast at the last preceding city election, the application is ineffectual; that on April 6, 1911, a pretended petition was presented to defendant, containing signatures purporting to be names of legal voters who demanded that a proposed charter amendment be submitted to the qualified electors of the city for their approval or rejection at an ensuing election, setting forth a copy of the measure; that defendant, complying with requirements of such ordinance, found that the feigned petition did not contain the required percentage of names of voters of the city who were registered, nor more than 1,876 thereof, or about 800 less than were necessary to enable the proposed alteration of the charter to be referred to the elect-

ors; that notwithstanding such deficiency defendant threatens to place on the official ballots the proposed amendment which, if adopted, will authorize an issue of bonds in the sum of $1,000,000 to secure a municipal paving plant, thereby imposing excessive taxation on plaintiff's property and causing a multiplicity of suits.

A demurrer was interposed to the complaint on the ground that it did not state facts sufficient to constitute a cause of suit. The issue was tried upon the question as to whether or not from a verification of the signatures of the petitioners it was incumbent upon the defendant to reject such names as were not upon the registration books of Multnomah County. The court, concluding that such duty was enjoined, overruled the demurrer, and, the defendant declining further to plead or answer, the relief prayed for in the complaint was granted, and he appeals.                                    REVERSED.

For appellant there was a brief with oral arguments by *Mr. Frank S. Grant* and *Mr. L. E. Latourette.*

*Mr. Martin Watrous, amicus curiae.*

For respondent there was a brief with oral arguments by *Mr. Lawrence A. McNary* and *Mr. William D. Fenton.*

MR. JUSTICE MOORE delivered the opinion of the court.

This court, upon consideration of the cause after it was argued and submitted, reversed the decree without giving a written opinion, in order that the mandate might go down in time to be obeyed prior to the election, and the reasons which induced the conclusions will now be stated.

The question to be examined is, who are qualified to sign petitions initiating measures to be voted upon at municipal elections? The parts of the organic act deemed to be involved herein and which relate to an employment of the initiative and referendum powers reserved to the people are as follows:

"The legal voters of every city and town are hereby granted power to enact and amend their municipal charter." Section 2, Article XI, of the Constitution of Oregon.

"The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure, by the initiative, in any city or town." Section 7a, Article IV of the Constitution of Oregon.

Pursuant to the authority thus granted, Ordinance No. 16,311 was duly enacted by the city of Portland, prescribing the forms of initiative and referendum petitions, wherein each petitioner is required to subscribe to the following statement:

"I have personally signed this petition. I am a legal voter of the city of Portland. My residence and street number are correctly written after my name."

The municipal enactment referred to demands that a petition must consist of sheets to which not more than 20 names can be signed, and the person who circulated the petition is required to make and subscribe to an oath on the back of each sheet to the effect that every one of the petitioners signed his name in the presence of the affiant who believes that the several clauses of the statement last quoted apply, and are true with respect to each petitioner.

"The auditor of the city of Portland shall accept for filing any petition for the initiative or for the referendum subject to the verification of the number and genuineness of the signatures and voting qualifications of the persons signing the same by reference to the registration books in the office of the county clerk of Multnomah County, and if a sufficient number of qualified voters be found to have signed said petition, he shall file the same within ten days after presentation thereof to him." Section 5, Article IV of the Constitution of Oregon.

"Legal voters of the city of Portland are qualified to sign a petition for the referendum or for the initiative for any measure which he is entitled to vote upon. Any person signing any name other than his own to a petition or knowingly signing his name more than once for the same measure at one election, or who is not at the time of signing the same a legal voter of the city, or any officer or other person (un)lawfully violating any of the provisions of this ordinance, shall, upon conviction thereof, be punished by fine not exceeding five hundred dollars, or by imprisonment in the city jail not exceeding six months, or by both such fine and imprisonment in the discretion of the municipal court." Section 11, Article IV, of the Constitution of Oregon.

In order to vote at an election held under the Portland charter, a person must have been a resident of that city for six months and of the ward or precinct in which he offers to vote for thirty days next preceding such election, and must also possess the qualifications of a legal voter of this State. Section 27, p. 13, Sp. Laws of Oregon, 1903. The qualifications thus added are that he must be a male citizen 21 or more years old and native born, or, if of foreign birth, that he has declared his intention to become a citizen of the United States, conformable to the naturalization laws thereof, one year preceding such election, is not idiotic or insane, has not been convicted of a felony, and is not a soldier in the army or a seaman in the navy of the United States. Sections 2, 3, 5, Article II of the Constitution of Oregon. It will be remembered that the organic act declares that not more than 15 per cent of the "legal voters" shall be required to propose an initiative measure, while the ordinance of Portland directs the auditor of that city upon receiving an initiative petition to verify the number and genuineness of the signatures thereon, and to ascertain the qualifications of the petitioners as electors, by referring to the registration books, and, if a sufficient number of "qualified voters" have signed the petition, it shall

be filed. Registered electors are thus recognized as quali-
fied voters, and only such as are competent petitioners to
initiate municipal measures. The comparison of the
handwriting of a petitioner with his signature on the
registration books, which the ordinance demands of the
auditor, was evidently designed to prevent forgery of
names by persons who pretended to circulate initiative
and referendum petitions for interested parties.

1. Such regulation necessarily tends to prevent fraud
in securing petitioners, but in our opinion the qualifica-
tion of registration is an unwarranted restriction of the
right to exercise the initiative power, guaranteed by the
constitution to legal voters.

2. Participation in the initiative of measures to be sub-
mitted to voters for their approval or repudiation is not
an election wherein any choice is required to be made,
but an initiative petition affords evidence of a desire on
the part of a few persons that the expediency of a pro-
posed law may be determined at the polls pursuant to
notice thereof. No great prerogative of the people is
violated by the organic act in prescribing a small per-
centage of legal voters as sufficient to inaugurate a pro-
posed law. The inception of enactments having been dele-
gated by the fundamental law to legal voters, the author-
ity thus conferred is so closely allied to an election, how-
ever, that the privilege of signing an initiative petition
cannot be abridged by any legislation that would amount
to a deprivation of the right: *White* v. *Commissioners,*
13 Or. 317 (10 Pac. 484: 57 Am. Rep. 20).

In *Roesch* v. *Henry,* 54 Or. 230 (103 Pac. 439), it was
held that the phrases "legal voters" and "registered
voters" were synonomous, and that no qualified elector
was a competent petitioner for a local option election,
unless his signature appeared on the registration books
of the county of which he was a resident. In that case
the local option law had been enacted in the entire state

pursuant to initiative petitions of "legal voters" (Section 1, Article IV, of the Constitution of Oregon), but the statute could be enforced in a county or a subdivision thereof or a precinct therein by petitions signed by "registered voters." Section 4920, L. O. L. The local option law thus put into operation was an entire statute previously adopted. No measure was proposed by the petitioners as an act formulated by them. They undertook to secure the application of the law to a particular territory. They were powerless to propose any change of the provisions of the statute which as an entire enactment could have been adopted or rejected in a designated district, and, such being the case, it was ruled, in effect, that limitation of the petitioners to "registered voters" was not violative of Section 1 of Article IV of the Constitution. In the case at bar, however, the measure proposed was not the application of an existing law to a particular district in which no change could be made in the enactment, but it was the presenting of an amendment to the charter as independent legislation in which the "legal voters" were granted the right to offer the proposed change in the municipal law.

3. It will be kept in mind that the ordinance prescribes maximum punishments for any violation of its provisions, and also demands that the person who circulated the petition shall make and subscribe his name to an oath as to the genuineness of the signatures of the petitioners. The law presumes that a person is innocent of a crime. Section 799, subd. 1, L. O. L. Based on such deduction, it follows that, when an initiative petition is presented having thereon the requisite number of names, subscribed to the statement that each has personally signed the petition, that he is a legal voter of the city of Portland, and that his residence and street number are correctly written after his name, and verified as required by the ordinance, a *prima facie* case is made, entitling the initiative

measure proposed to be entered by a proper title upon the official ballots, and imposing upon the auditor the burden of showing any fraud attempted to be perpetrated.

A vigorous prosecution of any violation of the provisions of the ordinance will inculcate a decent respect for its observance, and though the punishment inflicted may not prevent, in the first instance, the initiation or reference of measures which should not be submitted to a popular vote, thereby entailing expenses and causing delays that are unnecessary, the remedy must be found in an amendment of the organic law changing the phrase "legal voters" to "registered voters" or some term of equivalent import.

4. Believing that the 800 or more petitioners who had not registered were *prima facie* legal voters, and as such could have exercised the right on the day of the election by producing the requisite proof, which is tantamount to registration (Section 3463, L. O. L.), they are "legal voters" as defined by the constitution, and hence the conclusion was reached that an error had been committed in overruling the demurrer.                    REVERSED.